UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA CARPENTER,

                   Plaintiff,                                  Case Number 15-10780

v.                                            Honorable David M. Lawson

MONROE FINANCIAL RECOVERY
GROUP, LLC, GOODMAN FROST,
PLLC, and TIMOTHY J. FROST,

                   Defendants.

_____/

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COUNT I OF THE COMPLAINT, AND GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT

Two motions are pending before the Court in this Fair Debt Collections Practices case: the defendants' motion to dismiss Count II and Count III of the complaint (the "class claims"); and the plaintiff's motion for leave to file a first amended complaint to clarify certain factual allegations pleaded in Count I (her "individual claim"). The Court heard oral argument on August 3, 2015. For the reasons stated in detail below, the plaintiff will be allowed to amend Count I of her complaint, and the Court will dismiss Counts II and III.

<p style="text-align:center">I.</p>

Defendant Monroe Financial Recovery Group, LLC purchases defaulted debts from creditors and undertakes to collect them from the original debtors. Defendant Timothy Frost is an attorney with the law firm Goodman Frost, PLLC. Frost and his law firm represented Monroe in a 2014 state court action wherein the defendants sought to collect a credit card debt from plaintiff Pamela Carpenter, which they alleged she had incurred and refused to pay. On March 3, 2014, Frost filed a complaint against Carpenter in Michigan's 35th District Court in Plymouth, Michigan, alleging

that Carpenter had breached her credit card agreement by failing to pay what she owed, and raising a second claim for collection on an "account stated." The defendants did not attach to the state court complaint any documents evidencing the terms or conditions of the credit card account, but they alleged that Carpenter was in possession of documents reflecting those terms and conditions. Carpenter asserts that she never was served with a copy of the summons and complaint.

On April 10, 2014, Carpenter filed a Chapter 7 voluntary petition for bankruptcy. On June 17, 2014, after Carpenter failed to file an answer or otherwise appear in the state court proceeding, the defendants procured a default judgment against her. Sometime shortly after the default judgment was entered, Carpenter learned of the state court case and informed her bankruptcy attorney about it. On June 20, 2014, Carpenter's lawyer contacted Frost, informed him of the bankruptcy proceeding and the effect of the automatic stay under 11 U.S.C. § 362, and asked Frost if his client would agree to vacate the state court default judgment. Frost replied (remarkably) that his client had no intention of moving to set aside the default judgment. On August 4, 2014, Carpenter filed a motion in the state court to vacate the default judgment. The defendants later stipulated to entry of an order vacating the judgment, and (according to the defendants), on August 22, 2014, the state court entered an order setting aside the default and dismissing the case.

On July 15, 2014, Carpenter was granted a discharge in her bankruptcy case, which the defendants concede extinguished the debt at issue in the state court collection action. The defendants contend that they made no further attempt to collect the debt after they stipulated to vacate the judgment and dismiss the complaint in the state court case.

On March 4, 2015, the plaintiff filed her three-count complaint in this case raising claims under the Fair Debt Collection Practices Act (FDCPA) and the Michigan Regulation of Collection

-2-

Practices Act (MRCPA). In Count I (which the defendants have not sought to dismiss), the plaintiff alleges that the defendants engaged in unconscionable practices prohibited by the FDCPA by refusing her initial request to set aside the default judgment in the state court action and compelling her to file a motion to vacate the judgment. In Count II and Count III, she further alleges that the defendants' pleading practices in state court comprised false or misleading representations or unconscionable tactics because the allegation that Carpenter possessed the credit card terms and conditions was false, and without that false allegation the district court judge could not have entered a default judgment. The plaintiff also alleged that the account stated claim was not available to the state court plaintiff because Michigan law did not allow it. The plaintiff alleges here that those practices are "unconscionable and unfair" because "they are aimed at circumventing the required proof in establishing a valid claim on a credit card account and duping the consumer into believing that Monroe had indeed stated a valid claim." The claims in Count II for violations of the FDCPA and the congruent claims in Count III under the MRCPA both are premised on those same basic facts.

It appears that Carpenter never listed her causes of action against these defendants as assets in her bankruptcy proceeding. On April 15, 2015, Carpenter filed a motion to reopen her bankruptcy case, which was granted, and on June 11, 2015 she filed amended schedules B and C in the bankruptcy action. She declared her present causes of action as assets, with a stated total value of $3,250, and she sought an exemption for those claims under 11 U.S.C. § 522(d)(5) (which exempts from the bankruptcy estate "[t]he debtor's aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the exemption provided under paragraph (1) of this subsection [providing a $15,000 exemption for the value of any real or personal property used by

the debtor or her family as a personal residence]").  The defendants filed an objection to the amended schedules.  The bankruptcy court has set a hearing to consider the defendants' objections on August 13, 2015.

The plaintiff initially filed a motion to certify a class in this case consisting of all persons against whom the defendants filed complaints containing pleaded allegations similar to those described in Count II and III.  The parties later stipulated to the withdrawal of the class certification motion pending a decision on the defendants' present motion to dismiss.

The defendants moved to dismiss Counts II and III of the complaint on several grounds.  The plaintiff moved to amend Count I by moving an allegation in the body of that count to the general allegations section of the complaint, effectively narrowing the scope of her theory of liability.

II.

The defendants oppose the motion to amend the complaint, arguing that the new allegations are immaterial to any possible claim under the FDCPA or MRCPA, the only purpose of the proposed amendment is to "harass" defendants and force them to expend unnecessary time and effort resisting the motion to amend, and subsequent discovery has revealed that the plaintiff had no confusion about the fact that the alleged credit card debt was hers.  The plaintiff explains that the purpose of her amendment is merely to clarify and narrow the allegations in Count I, which the defendants have misconstrued, and to forestall the defendants' attempts to pursue irrelevant and gratuitous discovery relating to claims on which she has no intention of proceeding.

Under Federal Rule of Civil Procedure 15(a)(2), a party seeking to amend her pleadings at this stage of the proceedings must obtain  leave of court.  Rule 15(a)(2) instructs that "[t]he court should freely give leave when justice so requires."  But leave may be denied on the basis of undue

delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001).

In this case, the amendment will be allowed because the revisions in the proposed complaint are *de minimis* and offered by the plaintiff only to clarify the scope of the claims asserted, not to raise any new legal theory or factual basis for the claims already presented, and the defendants will not be in any way prejudiced by allowance of the amendment at this early stage of the case.

The defendants have not raised any substantive challenge to Count I (the "individual claim") of the original or proposed amended complaint in either their motion to dismiss or their response to the motion to amend.  The proposed amendment would (1) relocate and merge paragraph 32 from "Count I" of the original complaint into paragraph 31 under the preceding "facts" section, adding a statement that the plaintiff's complaint does not raise any claims premised upon allegations that the debt at issue was not the plaintiff's or was time barred; and (2) amend the prayer for damages to limit the total damages sought under Count I (the sole "individual" count) to $3,250, which is the declared value of the plaintiff's claims against the defendants that was set forth in the amended schedule of debts that the plaintiff has filed in her Chapter 7 bankruptcy case.

The defendants contend that the amendment would be "futile." A court may deny a motion for leave to amend when the proposed amendment would be futile.  *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th

Cir. 1986); *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980). If the district court concludes that the pleading as amended could not withstand a motion to dismiss, then the court may deny the motion to amend and save the parties and the court the expense of having to confront a claim doomed to failure from its outset. *Head*, 870 F.2d at 1123 (quoting *Martin*, 801 F.2d at 248). But here the defendants did not challenge Count I in their motion to dismiss, and in their response to the motion to amend, they simply reiterate their position that Count II and Count III should be dismissed. The defendants have not offered any basis for a conclusion that an amendment merely relocating factual allegations from the body of Count I to the general allegations section of the complaint would render the unchallenged count subject to dismissal, and it is evident that the allegations of the revised Paragraph 31 of the complaint are intended solely to clarify what claims the plaintiff is not attempting to pursue.

The defendants contend that they will be (or already have been) "prejudiced" by being forced to respond to the motion to amend. Courts also will deny leave to amend where there is "some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). An amendment to a complaint prejudices a party where the amendment will require that party to prepare an additional defense strategy and expend additional resources to defend against new claims. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973). Here, the lack of any substantial merit in the arguments advanced in their response undercuts the defendants' prejudice argument, and instead demonstrates that any such "prejudice" is self-inflicted and a direct result of their refusal to stipulate to allow an innocuous amendment. The defendants have not identified any way in which they will be required to conduct additional discovery or

prepare any new defense, and it is obvious there will be no such effect where the plaintiff's proposed amendment serves only to cabin, not to enlarge, the scope of her previously stated claims.

III.

Attacking Counts II and III, the defendants contend that the allegations that they falsely represented that the plaintiff was in possession of documents setting forth the terms and conditions of her credit card account are immaterial to any claim under the FDCPA, because even the most uneducated consumer would not be deceived as to whether she possessed such documents.  The defendants also argue that pleading a claim for "account stated" in the state court complaint cannot suffice to support any actionable violation under the FDCPA, because such a claim has long been recognized under Michigan law, defendants were allowed under the state rules of court to plead alternative theories of liability, and nothing in the substance of the claim in any way misrepresented the legal rights of either party.  The plaintiff responds that the state court pleadings stating that she was in possession of the terms and conditions of her account were materially false and misleading because they "duped" the state court into concluding that it could proceed to resolve the case and enter a default judgment against the plaintiff, when the complaint should instead have been dismissed without prejudice.  She also insists that there was no factual or legal basis for pleading a claim on an "account stated" where the defendants' filed their complaint after the Michigan Supreme Court supposedly held in *Fisher Sand & Gravel Co. v. Neal A. Sweebie, Inc.*, 494 Mich. 543, 837 N.W.2d 244 (2013), that a creditor's "exclusive remedy" in the case of a  credit card account governed by an express contract is an action to recover for breach of the credit card agreement.

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to assess whether the complaint is legally sufficient to allow the case to proceed further, even if all the allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, a plaintiff must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be accepted unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic

-8-

recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

The FDCPA prohibits any debt collector from using "false representation or deceptive means," and "unfair or unconscionable means" to collect a debt. 15 U.S.C. §§ 1692e, 1692f. To establish a claim under the FDCPA, "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arises out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated '§ 1692e's [or § 1692f's] prohibitions.'" *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (quoting *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)). "The use of any false representation or deceptive means to collect or attempt to collect any debt" violates 15 U.S.C. § 1692e(10); a false representation of "the character, amount, or legal status of any debt" violates 15 U.S.C. § 1692e(2)(A). "[T]he listed examples of illegal acts are just that — examples, [and the general language of] Sections 1692e and 1692f enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 450 (6th Cir. 2014) (citations and quotations omitted).

Similarly, the MRCPA prohibits any "regulated person" from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt," Mich. Comp. Laws § 445.252(e), and from "[m]isrepresenting in a communication with a debtor [either]

-9-

[t]he legal status of a legal action being taken or threatened [or] [t]he legal rights of the creditor or debtor," Mich. Comp. Laws § 445.252(f).

There is no dispute that the plaintiff is a "consumer," and the debt the defendants were attempting to collect was a consumer debt. Defendants Monroe and Goodman Frost admit that they are "debt collectors" as defined under the FDCPA. Attorney Frost does not concede that he is a "debt collector," but he does not dispute that he appeared as counsel of record for defendant Monroe in the state court lawsuit, and that he corresponded with plaintiff's counsel regarding the state court lawsuit on behalf of Monroe and the Goodman Frost law firm. Assuming that Frost engages "regularly" in such practice on behalf of the firm, he plainly qualifies as a "debt collector" under the Act. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). Defendants Frost and Goodman Frost deny that they were "regulated persons" under the MRCPA, but that argument plainly has no merit. *See* Mich. Comp. Laws § 445.251(g) ("'regulated person' means a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name."); *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 966-67 (E.D. Mich. 2012) (holding that a "law firm and its employees 'fit squarely within the definition of a regulating person' under the MRCPA" regardless of whether the firm's collection activities were in its own name).

The only element of the plaintiff's claims in Counts II and III genuinely in dispute in this motion is the fourth element, that is, whether the defendants engaged in a practice prohibited by the FDCPA or the MRCPA. Two of the defendants' practices must be examined: alleging in their complaint in state court that the debtor possessed the terms and conditions of the credit card

-10-

agreement, when those allegations were false or the plaintiffs had no such information or documents; and pleading a claim for "account stated" when the parties' relationship was governed by the credit card agreement.

### A.   "Written Instrument" Allegation

Section 1692e of the FDCPA "provides an 'extraordinarily broad' base of protection to consumers, and is intended to prevent all abusive debt collection practices by independent debt collectors that tend to deceive or mislead a consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1105 (6th Cir. 2015) (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Id.* at 1106 (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). "This is an objective standard, with a relatively low bar so as to cast FDCPA-protection over all consumers, even those who are 'gullible' or 'naive.'" *Ibid.* (citing *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008)). "However, because it is an objective standard, [the Court may not] sanction 'liability for bizarre or idiosyncratic interpretations of [communications or representations by debt collectors].'" *Ibid.* (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)). Instead, the Court "must consider the question of liability in light of the FDCPA's prevailing purpose — to prevent abusive, misleading, and deceptive debt collection practices." *Ibid.*

Nevertheless, "[o]nly material violations of the § 1692e prohibitions will result in liability." *Gillie*, 785 F.3d at 1106-07; *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's

-11-

ability to intelligently choose his or her response."). "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace*, 683 F.3d at 326-27. "Thus, only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking are actionable." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014). "[F]alse but non-material representations [that] are not likely to mislead the least sophisticated consumer . . . are not actionable." *Donohue*, 592 F.3d at 1033. That is because the statute is intended to protect consumers from "being intimidated or tricked by debt collectors." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011). The purpose of the FDCPA is not served by interfering with reasonable debt collection practices. *See* S. Rep. 95-382 ("[The FDCPA's] purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.").

Similarly, "[t]he FDCPA governs debt collection in or out of court; it does not allow debt collectors to use litigation as a vehicle for abusive and unfair practices that the Act forbids." *Stratton*, 770 F.3d at 451. Where the allegations of a complaint in an action to collect a debt are not merely an open-ended prayer for such relief as the court may see fit to grant, and instead explicitly and falsely represent the amount or character of a debt owed, or the pleading party's legal right to collect those amounts, such pleadings violate section 1692f. *Id.* at 452 ("By alleging in a complaint that a consumer owes interest that had in fact been waived, a debt collector may be able to secure a default judgment for an amount the consumer does not actually owe.").

-12-

Michigan Court Rule 2.113 states that "[i]f a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit unless the instrument is (a) a matter of public record in the county in which the action is commenced and its location in the record is stated in the pleading; (b) in the possession of the adverse party and the pleading so states; (c) inaccessible to the pleader and the pleading so states, giving the reason; or (d) of a nature that attaching the instrument would be unnecessary or impractical and the pleading so states, giving the reason." Mich. Ct. R. § 2.113(F)(1). It appears that the defendants alleged in their state court complaint that the credit card agreement was in Carpenter's possession to avoid the need to attach it to their state court complaint.

Nevertheless, the plaintiff's allegations that the defendants falsely pleaded that she was in possession of the "written instrument" setting forth the terms of her credit card account fail to state any plausible claim under the Act, since the state court pleadings in question, even if false, could not have misled even the least sophisticated consumer. Faced with nearly identical facts, the district court in *Washington v. Roosen, Varchetti & Oliver, PPLC*, 894 F. Supp. 2d 1015 (W.D. Mich. 2012), concluded that the "written instrument" allegations of the FDCPA plaintiff's complaint in that case were insufficient as a matter of law to make out any actionable claim under the Act:

> The "written instrument" statements in the state-court complaints are not material to Plaintiffs' federal claims. . . . Although the statement in the state-court complaint may be false, there is nothing deceptive about it. A technical falsity that does not deceive or mislead will not be material and, therefore, will not be actionable. Neither party disputes that [the plaintiffs] were issued credit cards subject to an agreement between them and the cards issuers. [The plaintiffs] would know whether they had in their possession a copy of the credit-card agreement. Such knowledge hardly requires technical expertise or legal training. The least sophisticated consumer would not be misled or deceived by the statement.
>
> The conclusion that the written instrument statement is not material is reinforced by the state-court remedy for failing to attach the written instrument. The failure to

-13-

> attach the written instrument is a correctable deficiency in the pleading, not a
> deficiency in the merits of the claim. In Michigan, failing to attach the written
> instrument to the complaint results in dismissal without prejudice. This distinguishes
> the written instrument statement from situations where the communication with the
> consumer threatens legal action, even though the statute of limitations has already
> run and the debt collector could not prevail if it filed a lawsuit to collect the debt.
> This also distinguishes the written instrument statement from situations where a
> statute prohibits attorney fees, even though the debt-collection suit could be
> interpreted as seeking attorney fees. [Unlike cases where the pleadings purported to
> allege a legal claim or demand for relief prohibited by law], no statute forbids a
> lawsuit where the debt-collector fails to attach the credit-card agreement to the
> complaint.

*Washington*, 894 F. Supp. 2d at 1023-24. The *Washington* court concluded that "the fact that the

debt collector failed to attach the credit-card agreement to the complaint, and may not have

possessed the credit-card agreement at the time the state-court complaint was filed, does not

constitute a violation of the FDCPA." *Id.* at 1024; *see also Hrivnak v. NCO Portfolio Mgmt.*, 994

F. Supp. 2d 889, 901 (N.D. Ohio 2014) ("[W]hether or not the 'contract' was attached to the

complaint, and whether or not the Defendants had possession of the 'contract' at the time the suit

was filed, does not constitute a violation of the FDCPA.").

The Court finds that reasoning persuasive and adopts it here.

### B. "Account Stated" Allegations

The plaintiff's theory of liability based on the premise that a debt collector cannot plead an

"account stated" claim when attempting to collect a credit card debt appears to be based on her

misreading of *Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 494 Mich. 543 837 N.W.2d 244

(2013), and therefore is equally unavailing. An action on an "account stated" is well established as

a valid form of collection proceeding under Michigan law. "Michigan has recognized a number of

collection actions. These actions include open account claims, mutual and open account current

claims, and account stated claims." *Fisher*, 494 Mich. at 553, 837 N.W.2d at 250. The *Fisher* court

-14-

took some care to distinguish claims on an "account stated" from those premised on breach of an express contract, and it also discussed at length the distinctions between claims brought under the related theories of an "open account" and "account stated." *Id.* at 557, 837 N.W.2d at 252 ("We now turn to the instant matter, which involves [both] an open account claim and an account stated claim"; "Of the three claims discussed in this opinion, the account stated claim is most clearly defined under Michigan law").

As the *Fisher* court explained, an "'open account' is traditionally defined as [] an unpaid or unsettled account [or an] account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability." *Id.* at 553-54, 837 N.W.2d at 250-51. In contrast, an "account stated action is based on an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." *Ibid.* The court further observed that the several species of collection claims had received in some instances disparate treatment under the applicable statutes and case law. *Id.* at 555, 837 N.W.2d at 251 ("[T]he accrual of mutual and open account claims is governed by MCL 600.5831, [but] no specific statutory provision exists for the accrual of either open account claims or claims on an account stated."). And the court also observed that an "open account" might, in some circumstances, be converted to an "account stated" by the course of dealing of the parties. *Id.* at 554-55, 837 N.W.2d at 251 ("Importantly, an open account may be converted into an account stated [where] the parties assent to a sum as the correct balance due from one to the other.").

-15-

The plaintiff relies solely on *Fisher* in arguing that there could be no colorable legal or factual basis for the "account stated" claim pleaded in the underlying state court debt collection action. But her reliance on *Fisher* is misplaced, and she misrepresents the holding of the case as precluding any action for "account stated" where it is alleged that the terms of the underlying debt were governed by an express contract between the parties. In the portion of the decision selectively quoted by the plaintiff, the *Fisher* court only held that a claim based upon an "open account" was precluded by the existence of an express contract:

> We hold that when an integral component of a transaction for goods or services is an express agreement for the periodic payment of money, *an open account claim cannot be established* by the mere performance or nonperformance of the contract obligation. Under those circumstances, the creditor's remedy is to timely pursue a breach of contract action when the debtor fails to live up to the terms of the underlying agreement. But when the credit relationship is not defined as an integral part of the transaction for goods or services, and instead arises from a course of dealing between the parties, an open account claim may arise by implied contract.

*Fisher*, 494 Mich. at 568, 837 N.W.2d at 258-59 (footnotes omitted; emphasis added). As to the separate claim for "account stated," the *Fisher* court in fact *reversed* the trial court's dismissal of that claim as time barred, holding that the claim was not subject to the four-year limitations period governing an action for breach of contract, notwithstanding that the parties had entered into an underlying express agreement for ongoing deliveries of goods and payments for the same. *Fisher*, 494 Mich. at 562, 837 N.W.2d at 255.

Nor does *Harden v. Autovest, LLC*, No. 15-34 (W.D. Mich. July 29, 2015), recently cited by the plaintiff in a supplemental brief, support her position. In that case, also brought under the FDCPA, the court denied the defendant creditor's motion to dismiss. The plaintiff in *Harden* alleged that the defendant's state court collection action was deceptive for two reasons: (1) it was time barred; and (2) the defendant had not properly been assigned the debt in question and therefore

-16-

had no right to collect it.  The creditor resisted the motion, relying on its alternative pleading of a claim for "account stated," which it contended was not time barred, even if the claim for breach of contract was.

The *Harden* court did not hold that the alternative pleading of both "account stated" and breach claims was in any way "misleading" or "unconscionable."  Instead, the court concluded that the defendant's state court action was not viable because the controlling statute of limitations, in a case where the claims involved an express contract for payment, was the four-year period applicable to a breach of contract claim, and not any longer period applicable to the alternatively pleaded claims for "account stated," "open account," or "unjust enrichment."  Moreover, the *Harden* court noted that "Autovest did not allege a course of financial transactions in its state court action, nor did it allege that it sent Mr. Harden notice of an amount due and that he assented to this amount." *Harden*, slip op. at 7.  The *Harden* court did not hold that any rule of law prohibited the alternative pleading of breach and account stated claims, only that the account stated claim actually set out in the state court complaint was insufficiently pleaded as a matter of law to state any viable claim for relief that could have been subject to a longer limitations period.

The plaintiff has not cited, and the Court has not found, any case applying Michigan law where a court has adopted the plaintiff's misreading of *Fisher*.  Moreover, *Fisher* was decided in 1997, and Michigan courts in recent published decisions routinely have countenanced recovery by a plaintiff on alternative claims for breach of contract and account stated, where the pleaded facts and circumstances support verdicts for both.  For example, alternative pleading and recovery may be warranted where an express agreement was signed providing for billing rates and payment terms, the defendant received periodic bills and made some payments, and where it also was shown that

-17-

the defendant later received a final statement of amounts due under the agreement and never objected to the statement, but failed or refused ever to pay the full final balance.  *E.g.*, *Dunn v. Bennett*, 303 Mich. App. 767, 772, 846 N.W.2d 75, 78 (2013).  Those circumstances pretty much describe the relationship between a credit card company and its customer.

In any event, the defendants' actions described in Counts II and III of the complaint in this case do not establish that the defendants engaged in conduct prohibited by the FDCPA or the MRCPA.

<div align="center">IV.</div>

The plaintiff is entitled to amend Count I of her complaint.  However, she has not stated a claim for which relief can be granted in Counts II or III.

Accordingly it is **ORDERED** that the motion to dismiss Counts II and III of the complaint [dkt. #13] is **GRANTED**.  Counts II and III are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion for leave to file an amended complaint [dkt. #25] is **GRANTED**.  If the plaintiff desires to file an amended complaint, then she must do so **on or before August 14, 2015**.

<div style="margin-left:40%">s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge</div>

Dated:   August 10, 2015

<div align="center" style="border:1px solid black; background:#ccc; padding:8px;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 10, 2015.

s/Susan Pinkowski<br>SUSAN PINKOWSKI

</div>